AO 106 (REV 4/10) Affidavit for Search Warrant                     AUSA Barry Jones, (312) 886-8027

**FILED**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

MAR 2 7 2020

**THOMAS G. BRUTON**
**CLERK, U.S DISTRICT COURT**

In the Matter of the Search of:            Case Number:

The Google account prosa2909@gmail.com, further
described in Attachment A

# 20 M 180

## APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Eileen McChrystal, a Special Agent of the Federal Bureau of Investigation, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

**See Attachment A**

located in the Northern District of California, there is now concealed:

**See Attachment A**

The basis for the search under Fed. R. Crim. P. 41(c) is evidence.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 286 | Conspiracy to Defraud the United States with Respect to Claims |
| Title 18, United States Code, Section 287 | False, Fictitious or Fraudulent Claims |
| Title 26, United States Code, Section 7206(2) | Aiding or Assisting the Preparation or Presentation of False Tax Returns |

The application is based on these facts:

**See Attached Affidavit,**

Continued on the attached sheet.

_/s/ Eileen McChrystal_
*Applicant's Signature*

Eileen McChrystal, Special Agent
Federal Bureau of Investigation
*Printed name and title*

Sworn to before me and signed via telephone.

Date: March 27, 2020

*Judge's signature*

City and State: Chicago, Illinois            Virginia M. Kendall U.S. District Judge
*Printed name and title*

UNITED STATES DISTRICT COURT    )
                                     )
NORTHERN DISTRICT OF ILLINOIS    )

### AFFIDAVIT

I, Eileen McChrystal, being duly sworn, state as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation. I have been so employed since approximately June 2004.

2.      As part of my duties as an FBI Special Agent, I investigate criminal violations relating to domestic terrorism. In my career, I have participated in investigations, as both the case agent and co-case agent, concerning fraudulent filings by self-declared sovereign citizens and related ideology. I have also participated in the execution of multiple federal search warrants, some of which have concerned tax crimes.

3.      This affidavit is made in support of an application for a warrant to search, pursuant to Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), for information associated with certain account(s) that are stored at the premises owned, maintained, controlled, or operated by Google, a free web-based electronic mail service provider located at 1600 Amphitheatre Parkway, Mountain View, California, 94043. The account to be searched is prosa2909@gmail.com ("**Subject Account 8**"), which is further described in the following paragraphs and in Part II of Attachment A. As set forth below, there is probable cause to believe that in the account, described in Part II of Attachment A, in the possession of Google, there

exists evidence of violations of Title 26, United States Code, Section 7206(2) and 18, United States Code, Sections 286 and 287.

4.     The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence of violations of Title 26, United States Code, Section 7206(2) and 18, United States Code, Sections 286 and 287, are located in the Subject Account.

## I.     BACKGROUND INFORMATION

### A.     Google

5.     Based on my training and experience and information available from Google's website (google.com), I have learned the following information about Google and Gmail:

a.     Google offers a collection of Internet-based services, including e-mail and online data storage, which is owned and controlled by Google. The services are available at no cost to Internet users, though there are certain options, such as additional online data storage, that users may elect to pay money to receive. Subscribers obtain an account by registering on the Internet with Google and providing Google with basic information, including name, gender, zip code, and other

2

personal/biographical information. Subscribers are given a Google account which ends in "@gmail.com" which is utilized to access these online services.

b.     Google maintains electronic records pertaining to the individuals and entities who maintain Google online subscriber accounts. These records often include account access information, e-mail transaction information, account application information, and in some circumstances billing and payment information.

c.     Any e-mail that is sent to a Google online account subscriber is stored in the subscriber's "mail box" on Google's servers until the subscriber deletes the e-mail or the subscriber's mailbox exceeds the storage limits preset by Google. If the message is not deleted by the subscriber, the account is below the maximum storage limit, and the subscriber accesses the account periodically, that message can remain on Google's servers indefinitely.

d.     When a subscriber sends an e-mail, it is initiated by the user, transferred via the Internet to Google's servers, and then transmitted to its end destination. Google online account users have the option of saving a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the Google server, the e-mail may remain on the system indefinitely.

e.     Google online account subscribers can store files, including but not limited to e-mails, documents, and image files, on servers maintained and/or owned by Google. The online data storage service is known as "Google Drive."

3

f.      Google online account subscribers can also utilize a feature known as "History" that allows a user to track various historical account activity, including past Google Internet searches performed, information regarding devices which have been used to login to the Google online account, and physical location information regarding from where the Google online account was accessed.

g.      Google keeps records that can reveal accounts accessed from the same electronic device, such as the same computer or mobile phone, including accounts that are linked by "cookies," which are small pieces of text sent to the user's Internet browser when visiting websites.

6.      Therefore, the computers of Google are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Google, such as account access information, transaction information, and account application. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Google, to protect the rights of the subjects of the investigation and to effectively pursue this investigation, authority is sought to allow Google to make a digital copy of the entire contents of the information subject to seizure specified in Section II of Attachment A. That copy will be provided to me or to any authorized federal agent. The contents will then be analyzed to identify records and information subject to seizure pursuant to Section III of Attachment A.

**B.    1099 Pro, Inc.**

7.    The business 1099 Pro, Inc enables "any size business or institution" to manage, process, and file various IRS forms in order for them stay compliant with IRS requirements. According to its Linkedin page, 1099 Pro, Inc. "is the market's leading provider of information reporting solutions and services for…W-2…"[1] Their products include software that allows businesses to open an account with 1099 Pro, create Forms W-2 and electronically file those Forms W-2 from the company's website, www.efilemyforms.com. Forms W2 are routed through the Social Security Administration (SSA) who then forwards the Forms W-2 to the IRS. The Forms W-2 report wages paid to employees and the taxes withheld from those wages.

8.    In short, an employer will create an account with 1099 Pro. The employer will submit Forms W-2 for its employees to their 1099 Pro account. 1099 Pro then forwards the Forms W-2 to the SSA, who forwards them on to the IRS.

9.    I know from consulting with IRS agents that the IRS generally matches the Forms W-2 submitted by employers with the income information and Forms W-2 submitted on tax returns filed by employees to ensure the accuracy of the filed tax return.

---

[1] https://www.linkedin.com/company/1099-pro.

## II. FACTS SUPPORTING PROBABLE CAUSE TO SEARCH THE SUBJECT ACCOUNT

### A. Summary of the Investigation

10.    The **Subject Account**, which the FBI and IRS-CI seek to search, was utilized by Eunice Salley ("Salley"), a tax return preparer, to create an account with 1099 Pro ("Subject 1099 Pro account"). The Subject 1099 Pro account was then used by Salley to submit false Forms W-2, under the pretext that the Forms W-2 were being filed by employers, which matched the false wage and withholding information appearing on tax returns Salley prepared and filed with the IRS on behalf of her clients. The Subject 1099 Pro Account was opened under the name of Individual A, a client of Salley, who did not authorize Salley to open the account.

### B. Eunice Salley

11.    Salley was a tax preparer who operated a tax preparation business known as Tax Research and Resolution Inc.[2] On June 15, 2012, Salley obtained from the IRS a Preparer Tax Identification Number (PTIN), with which allowed her to prepare federal income tax returns on behalf of her clients.

12.    On November 15, 2013, Salley submitted to the IRS an application for an Electronic Filing Identification Number (EFIN) for her business, Tax Research and Resolution Inc. Her business was subsequently assigned EFIN 156818. The

---

[2] On November 5, 2019, Salley was indicted for violating Title 18, United States Code Section, 1341 (mail fraud) and multiple counts of Title 18, United States Codes, Section 664 (theft from an employee benefit plan) (N.D. Ill., 19 CR 797).

EFIN allowed Salley's tax preparation business to electronically submit completed tax returns to the IRS.

13.     Since tax year 2013, over 300 tax returns filed on behalf of individuals indicate that TRR is in the business of tax return preparation as both Salley and/or the business appear in the paid preparer section of these tax returns. More specifically, Eunice Salley or Oya Awanata, were listed as the preparer on 348 tax returns and Salley's home address was listed on 324 tax returns for the aforementioned tax years. These tax returns were filed on behalf of clients during the 2013 through 2018 tax season.

14.     According to IRS records, of the tax returns Salley prepared and filed between 2014 and May 2018, 100% of these returns claimed a refund. Based upon information provided to me by IRS agents, as well as my training, knowledge and experience, a 100% refund rate is abnormal and normally only seen in the case of tax return preparers who prepare fraudulent returns.

**C.     1099 Pro Account**

15.     According to records provided by 1099 Pro, on March 17, 2015, an account (Subject 1099 Pro Account) under the name Family Remodeling and Hardware Floors was opened by Individual A using **Subject Account 8**. According to the 1099 Pro records, the Subject 1099 Pro Account was last accessed on August 19, 2019.

16.     On March 18, 2020 and March 23, 2020, Individual A informed law enforcement agents that he owned Family Remodeling and Hardwood flooring. He stated that Salley had previously prepared a tax return for him and, as part of the preparation, he provided her with his business information including the Employer Identification Number for his business. Individual A stated that he did not open the Subject 1099 Pro Account, that he did not authorize Salley to open the Subject 1099 Pro Account, and that he was not aware that the account had been opened until informed by law enforcement.

17.     The IRS provided the SSA with a sampling of 92 tax returns prepared by Salley and requested that the SSA provide information on the accounts used to file the Forms W-2 allegedly filed by the employer. According to information provided by the SSA, the majority of the Forms W-2 associated with those tax returns were submitted via five 1099 Pro Accounts, including the Subject 1099 Pro Account.

18.     According to the 1099 Pro records, 346 Forms W2 were filed with the SSA through the Subject 1099 Pro Account, including 76 of the 88 Forms W-2 associated with tax returns filed by Salley. According to the 1099 Pro records, 32 of the 76 Forms W-2, and approximately 195 other Forms W-2, were filed through 1099 Pro from Subject 1099 Pro Account, from three IP addresses: 99.127.166.220, 99.137.150.67 and 71.201.9.102. According to records provided by AT&T and Comcast, the IP addresses were at various times assigned to Salley's residence at 9220 S Dauphin Ave, Chicago, IL.

### D.   False returns

#### ALKP, Inc.

19.     According to information from 1099 Pro, there were 19 Forms W-2 purportedly created by ALKP Inc., that were submitted to the SSA through the Subject 1099 Pro account. According to 1099 Pro records, 17 of the 19 Forms W-2 were submitted via the IP addresses assigned to Salley's residence.

20.     Individual B, the owner of ALKP, Inc., has informed law enforcement agents that ALKP was a home rehabilitation business that did not have any employees. Individual B reviewed the names on the Forms W-2 and has stated that none of the individuals were ever employed by ALKP nor did ALKP ever pay the individuals. Individual B further stated that he did not create the Forms W-2 or provide the information on the Forms W-2 to Salley.

21.     Individual B stated Salley has prepared his tax returns for him and that, as part of the preparation process, she had access to information pertaining to ALKP to include the business address and Employment Identification Number.

22.     For the tax years 2015 and 2016, Salley filed at least nine tax returns using false ALKP Forms W-2.

9

*Client R.B.'s 2015 Amended Tax Return*

23.     On or about September 9, 2016, a 2015 Amended Form 1040, Individual Income Tax Return, for Client R.B. was filed by mail with the IRS. Salley's name and signature appear on the return as the preparer.

24.     Attached to the amended tax return was a Form W-2 filed that was purportedly issued by ALKP Inc. and which listed wages of $67,890. According to the tax return, the justification for the amended return was "added W-2 information to Form 1040." The return claimed a refund of $9,822.

25.     Client R.B. informed law enforcement agents that he did not work for ALKP and that he did not earn $67,890 in 2015. He further stated that Salley prepared his amended tax return and that he did not provide Salley with the false information.

26.     A 2015 Form W-2 purportedly issued by ALKP in the name of Client R.B. was submitted to the SSA through the Subject 1099 Pro account. According to the 1099 Pro records, this Form W-2 was submitted to the Subject 1099 Pro Account from an IP address associated with Salley's residence.

*Client E.R.'s 2015 Tax Return*

27.     On or about August 7, 2016, a 2015 Form 1040, Individual Income Tax Return, for Client E.R. was electronically filed with the IRS. According to IRS records, Salley was listed as the return preparer, and her PTIN was on the return.

10

28.    Client E.R.'s 2015 tax return contained a Form W-2 filed that was purportedly issued by ALKP Inc. and listed wages of $95,000. The return claimed a refund of $27,473.

29.    Client E.R. informed law enforcement agents that he did not work for ALKP and that he did not earn $95,000 in 2015. He further stated that Salley prepared his 2015 tax return and that he did not provide Salley with the false information.

30.    A 2015 Form W-2 purportedly issued by ALKP in the name of Client E.R. was submitted to the SSA through the Subject 1099 Pro account. According to the 1099 Pro records, this Form W-2 was submitted to the Subject 1099 Pro Account from an IP address associated with Salley's residence.

*Client P.J.'s 2015 Tax Return*

31.    On or about October 12, 2016, a 2015 Form 1040, Individual Income Tax Return, for Client P.J. was electronically filed with the IRS. According to IRS records, Salley was listed on the return as the return preparer as was her firm Tax Research and Resolution, Inc.

32.    Client P.J.'s 2015 tax return contained a Form W-2 filed that was purportedly issued by ALKP Inc. and listed wages of $100,000. The return claimed a refund of $34,482

33.    Client P.J. informed law enforcement agents that he did not work for ALKP and that he did not earn $100,000 in 2015. He further stated that Salley

11

prepared his 2015 tax return and that he did not provide Salley with the false information.

34.    A 2015 Form W-2 purportedly issued by ALKP in the name of Client P.J. was submitted to the SSA through Subject 1099 Pro account. According to the 1099 Pro records, this Form W-2 was submitted to the Subject 1099 Pro account from an IP address associated with Salley's residence.

**Dreamland Entertainment Corp.**

35.    Twelve Forms W-2 purportedly issued by Dreamland Entertainment Corp were submitted to the SSA through the Subject 1099 Pro Account. Of the twelve, four were submitted from IP addresses assigned to Salley's residence.

36.    Individual C, the owner of Dreamland, has informed law enforcement agents that Dreamland was a business that he owned and operated but that it did not have any employees. Individual B reviewed the names on the Forms W-2 and, other than the W-2s issued in his name, he stated none of the other individuals were ever employed by Dreamland. Individual C further stated that he did not create the Forms W-2 or provide the information on the Forms W-2 to Salley.

37.    Individual C stated Salley has prepared his tax returns for him and that, as part of the preparation, he provided her with information pertaining to Dreamland to include the business address and Employment Identification Number.

38.     On or about July 8, 2016, a 2015 Form 1040, Individual Income Tax Return, for Individual C was electronically filed with the IRS. According to IRS records, Salley was listed as the return preparer, and her PTIN was on the return.

39.     Attached to the tax return was a Form W-2 filed that was purportedly issued by Dreamland and which listed wages of $120,000. The return claimed a refund of $18,284.

40.     Individual C informed law enforcement agents that he did not earn $120,000 from Dreamland in 2015. He further stated that Salley prepared his 2015 tax return and that he did not provide Salley with the false information.

41.     A 2015 Form W-2 purportedly issued by Dreamland in the name of Individual C was submitted to the SSA through Subject 1099 Pro account. According to the 1099 Pro records, this Form W-2 was submitted to the Subject 1099 Pro account from an IP address associated with Salley's residence.

**Woman Hallowed in Prayer (WHIP)**

42.     Twenty-five Forms W-2 purportedly issued by WHIP were submitted to the SSA through the Subject 1099 Pro account. Of these 25 Forms W-2, 18 were submitted from IP addresses associated with Salley's residence

43.     Individual D, the owner of WHIP, has informed law enforcement agents that WHIP was a nonprofit entity located in Missouri that did not have any employees. Individual D reviewed the names on the Forms W-2 and has stated that none of the individuals were ever employed by WHIP.

13

44.     Individual D stated that she does not know who Salley is or how Salley may have obtained WHIP's information.

*Client J.L.'s 2016 Tax Return*

45.     On or about May 13, 2017, a 2016 Form 1040, Individual Income Tax Return, for Client J.L . was electronically filed with the IRS. According to IRS records, Salley was listed as the return preparer, and her PTIN was on the return.

46.     Client J.L.'s 2016 tax return contained a Form W-2 filed that was purportedly issued by WHIP and listed wages of $80,000. The return claimed a refund of $18,648.

47.     Client J.L. informed law enforcement agents that she did not work for WHIP and that she did not earn $80,000 in 2016. She further stated that Salley prepared her 2016 tax return and that she did not provide Salley with the false information.

48.     A 2016 Form W-2 purportedly issued by WHIP in the name of Client J.L. was submitted to the SSA through the Subject 1099 Pro account. According to the 1099 Pro records, this Form W-2 was submitted to the Subject 1099 Pro Account from an IP address associated with Salley's residence.

**E-mail Provider Information from Google**

49.     According to Google records, **Subject Account 8** was created on December 28, 2013, and was last accessed on May 21, 2017. The account is registered to Daniel Salley with a phone number of 312-576-7127. According to records provided

by A&T, that phone number is registered to Daniel Salley, at Eunice Salley's home address and with an email account of salleyeunice@yahoo.com.

50.     Daniel Salley is Salley's father. According to the media reports, in February 2006, Daniel Salley was sentenced to life in prison.

51.     On March 3, 2020, a preservation letter was served Google for **Subject Account 8.**

### E.     Background on Search of Email Provider Accounts

52.     As set forth above, there is probable cause to believe that SALLEY used **Subject Account 8** to register for a service, 1099 Pro, that she then used to file fraudulent Forms W-2. Based on my training and experience and publically available information I have reviewed about 1099 Pro, **Subject Account 8** is likely to contain information about the filing of these fraudulent Forms W-2.

53.     In addition, based on my training and experience in fraud investigations, I believe that a search of email provider account contents often of individuals engaged in criminal conduct involving the preparation of tax returns yields investigative leads relating to:

a.     the identities of co-conspirators, customers, and other individuals engaged in tax fraud;

b.     the contact information of co-conspirators, customers, and other individuals engaged in the tax fraud;

c.     the timing of communications among co-conspirators, customers, and other individuals involved in the tax fraud;

d.    documents supplied by the clients to assist in the preparation of the tax return including Forms W-2, Forms 1099, and other tax related documents including the sources of fraudulent documents;

e.    the methods and techniques used in the preparation of the fraudulent tax returns;

f.    information regarding the proceeds from the fraudulent refunds, including copies of invoices and receipts from fraudulent purchases relating to the fraudulent schemes.

54.    Based on my training and experience, a search of email accounts can yield evidence of financial transactions, including correspondence and alerts sent from banks and other financial institutions.

55.    Finally, based on my training and experience, email accounts commonly contain attribution evidence revealing the identity and location of the user or users of the account.

## SEARCH PROCEDURE

56.    In order to facilitate seizure by law enforcement of the records and information described in Attachment A, this affidavit and application for search warrant seek authorization, pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), to permit employees of Google to assist agents in the execution of this warrant. In executing this warrant, the following procedures will be implemented:

a.    The search warrant will be presented to Google personnel who will be directed to the information described in Section II of Attachment A;

16

b.     In order to minimize any disruption of computer service to innocent third parties, Google employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II of Attachment A, including an exact duplicate of all information stored in the computer accounts and files described therein;

57.     Google employees will provide the exact duplicate in electronic form of the information described in Section II of the Attachment A and all information stored in those accounts and files to the agent who serves this search warrant; and

58.     Following the protocol set out in the Addendum to Attachment A, law enforcement personnel will thereafter review all information and records received from Google employees to locate the information to be seized by law enforcement personnel pursuant to Section III of Attachment A.

### CONCLUSION

59.     Based on the above information, I respectfully submit that there is probable cause to believe that evidence of violations of Title 26, United States Code, Section 7206(2) and 18, United States Code, Sections 286 and 287 are located within one or more computers and/or servers found at Google, headquartered at 1600 Amphitheatre Parkway, Mountain View, California, 94043. By this affidavit and application, I request that the Court issue a search warrant directed to Google allowing agents to seize the electronic evidence and other information stored on the

Google servers following the search procedure described in Attachment A and the Addendum to Attachment A.

FURTHER AFFIANT SAYETH NOT.

/s/ Eileen McChrystal
Eileen McChrystal
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me via
telephone this 27th day of March, 2020

Honorable Virginie M. Kendall
United States District Judge

18

### ATTACHMENT A

I. **SEARCH PROCEDURE**

1. The search warrant will be presented to Google personnel, who will be directed to isolate those accounts and files described in Section II below.

2. In order to minimize any disruption of computer service to innocent third parties, company employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein.

3. Google employees will provide the exact duplicate in electronic form of the accounts and files described in Section II below and all information stored in those accounts and files to the agent who serves the search warrant. Google shall disclose responsive data, if any, by sending to Attention: SA Eileen McChyrstal, FBI Chicago WRA, 4343 Commerce Ct, Suite 600, Lisle, IL 60532 using the US Postal Service or another courier service, notwithstanding 18 U.S.C. § 2252A or similar statute or code.

4. Following the protocol set out in the Addendum to this Attachment, law enforcement personnel will thereafter review information and records received from company employees to locate the information to be seized by law enforcement personnel specified in Section III below.

II. **FILES AND ACCOUNTS TO BE COPIED BY EMPLOYEES OF GOOGLE**

To the extent that the information described below in Section III is within the possession, custody, or control of Google, which are stored at premises owned,

maintained, controlled, or operated by Google, headquartered at 1600 Amphitheatre Parkway, Mountain View, California, 94043, Google is required to disclose the following information to the government for the following account:

**prosa2909@gmail.com**

a.      All available account contents from inception of account to present, including e-mails, attachments thereto, drafts, contact lists, address books, and search history, stored and presently contained in, or maintained pursuant to law enforcement request to preserve.

b.      All electronic files stored online via Google Drive, stored and presently contained in, or on behalf of the account described above.

c.      All search history records stored and presently contained in, or on behalf of the account described above including, if applicable, web and application activity history (including search terms), device information history, and location history.

d.      All existing printouts from original storage of all the electronic mail described above.

e.      All transactional information of all activity of the electronic mail addresses and/or individual account described above, including log files, dates, times, methods of connecting, ports, dial-ups, and/or locations.

f.      All business records and subscriber information, in any form kept, pertaining to the electronic mail addresses and/or individual accounts described

2

above, including applications, subscribers' full names, all screen names associated with the subscribers and/or accounts, all account names associated with the subscribers, methods of payment, telephone numbers, addresses, and detailed billing and payment records.

g.     All records indicating the services available to subscribers of the electronic mail addresses and/or individual account described above.

h.     All account contents previously preserved by Google, in electronic or printed form, including all e-mail, including attachments thereto, and Google Drive stored electronic files for the account described above.

i.     All subscriber records for any Google account associated by cookies, recovery email address, or telephone number to the account described above.

Pursuant to 18 U.S.C. § 2703(d), the service provider is hereby ordered to disclose the above information to the government within 14 days of the signing of this warrant.

## III.     Information to be Seized by Law Enforcement Personnel

All information described above in Section II that constitutes evidence concerning violations of Title 26, United States Code, Section 7206(2) and 18, United States Code, Sections 286 and 287, as follows:

1.     Items related to the identity of the user or users of the **Subject Account**.

2.      Items related to the physical location of the users of the **Subject Account** at or near the times of the **Subject Offenses**.

3.      Items related to the ownership of Tax Research and Resolution Inc.

4.      Items related to employees of Tax Research and Resolution Inc.

5.      Items related to the identities and contact information of participants in or witnesses to the **Subject Offenses**.

6.      Items related to any account opened with 1099 Pro.

7.      Items related to the filing of tax returns with the IRS, including tax documents, Forms 1040, Forms W-2, and associated forms.

8.      Items related to the submission of Forms W-2 to the SSA.

9.      Items related to the filing of any documentation pertaining to the incorporation or establishment of any company, Forms W-2 filed by companies, or any other document regarding a company.

10.     Items related to clients of Eunice Salley or Tax Research and Resolution Inc, to include identification of clients, location of clients, and documents supplied by the clients to assist in the preparation of the tax return including Forms W-2, Forms 1099, and other tax related documents.

11.     Items related to financial transactions of Eunice Salley or Tax Research and Resolution, to include: invoices, ledgers, receipts, records of fund transfers, and payment records.

12.     Items related to the preparation of tax returns.

4

13.    Correspondence with tax preparation customers and/or the Internal Revenue Service.

14.    Items related to the identities and contact information of participants in or witnesses to the **Subject Offenses**.

15.    All of the non-content records described above in Section II.

## ADDENDUM TO ATTACHMENT A

With respect to the search of any information and records received from the free web-based electronic mail service provider, law enforcement personnel will locate the information to be seized pursuant to Section III of Attachment A according to the following protocol.

The search procedure may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

        a.     searching for and attempting to recover any hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein.

        b.     surveying various file directories and the electronic mail, including attachments thereto to determine whether they include data falling within the list of items to be seized as set forth herein.

        c.     opening or reading portions of electronic mail, and attachments thereto, in order to determine whether their contents fall within the items to be seized as set forth herein, and/or

        d.     performing key word searches through all electronic mail and attachments thereto, to determine whether occurrences of language contained in such

electronic mail, and attachments thereto, exist that are likely to appear in the information to be seized described in Section III of Attachment A.

Law enforcement personnel are not authorized to conduct additional searches on any information beyond the scope of the items to be seized by this warrant.

AO 93 (Rev. 11/13) Search and Seizure Warrant          AUSA Barry Jonas, (312) 886-8027

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**FILED**

In the Matter of the Search of:

The Google account prosa2909@gmail.com, further described in Attachment A

Case Number:

**MAR 27 2020**

**THOMAS G. BRUTON**
**CLERK, U.S DISTRICT COURT**

## SEARCH AND SEIZURE WARRANT

To: Eileen McChrystal and any authorized law enforcement officer

**20 M 180**

     An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Northern District of California:

### See Attachment A

     I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

### See Attachment A

     **YOU ARE HEREBY COMMANDED** to execute this warrant on or before <u>April 10, 2020</u> in the daytime (6:00 a.m. to 10:00 p.m.).

     Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

     The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the issuing United States Magistrate Judge.

Date and time issued: <u>March 27, 2020</u>

                             *Judge's signature*

City and State: <u>Chicago, Illinois</u>         <u>Virginia M. Kendall, U.S. District Judge</u>
                                           *Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No: | Date and Time Warrant Executed: | Copy of Warrant and Inventory Left With: |
| Inventory made in the presence of: | | |

Inventory of the property taken and name of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*